**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50695**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: June 26, 2025 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| ALLAN JAMI HUBBARD, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Javier L. Gabiola, District Judge.

Judgment of conviction for aggravated battery and aggravated assault, <u>vacated</u>; <u>case remanded</u>.

Erik R. Lehtinen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Amy J. Lavin, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Judge

Allan Jami Hubbard appeals from his judgment of conviction for aggravated battery and aggravated assault. For the reasons set forth below, we vacate the judgment and remand the case for further proceedings.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Hubbard was charged with three counts of aggravated battery, aggravated assault, attempted strangulation, and a deadly weapon enhancement. Following mediation, Hubbard and the State reached a binding I.C.R. 11 plea agreement providing for Hubbard to plead guilty to one count of aggravated battery and aggravated assault. In exchange for Hubbard's guilty pleas, the State agreed to dismiss the remaining charges and the weapon enhancement. The State also agreed

1

to recommend a suspended, unified sentence of fifteen years, with a minimum period of confinement of seven years. While the agreement was not reduced to writing, the judge who conducted the mediation appeared at Hubbard's change of plea hearing and recited the agreement's terms on the record.

During the plea colloquy, the district court informed Hubbard that, despite the binding agreement, it reserved the right to reject the agreement pending the outcome of the presentence investigation report. The district court further advised Hubbard that he would be entitled to withdraw his guilty pleas and proceed to trial if the agreement was rejected. Hubbard indicated he understood the district court's caveats. Ultimately, the district court accepted Hubbard's guilty pleas, finding that they were made knowingly and voluntarily. Thereafter, the district court ordered "preparation of a presentence investigation report" and ordered Hubbard to comply with the process of completing the report. Sentencing was scheduled for October 18, 2021. The district court also continued Hubbard's release[1] prior to his sentencing hearing.

Thereafter, Hubbard reported to the probation office and scheduled his presentence investigation interview. However, when an evaluator contacted Hubbard after he failed to appear for a different interview, Hubbard indicated he was considering withdrawing his guilty pleas. Hubbard did not attend his presentence investigation interview. As a result, the district court issued a bench warrant on the basis that Hubbard violated the conditions of his pretrial release by failing to meet with the presentence investigator. Hubbard was arrested and sentencing was rescheduled for December 2, 2021. While in custody, Hubbard participated in the presentence investigation interview, which was completed prior to the December 2, 2021, sentencing hearing. On December 2, 2021, Hubbard's trial counsel filed a motion to withdraw, citing a breakdown of the attorney-client relationship. The district court granted the motion to withdraw, appointed conflict counsel, and again reset Hubbard's sentencing hearing.

Prior to the sentencing hearing, the State filed a motion alleging Hubbard breached the terms of the agreement when he failed to participate in the presentence investigation. Hubbard

---

[1]     The record shows that Hubbard posted bond prior to the change of plea hearing. As conditions of his release, the district court ordered Hubbard to maintain contact with his trial counsel, not leave the State of Idaho without his trial counsel's knowledge or permission, and not violate any other laws.

responded with a motion to enforce the plea agreement, asserting he did not breach the agreement and that the State was therefore required to uphold its obligations under the terms of the agreement. Ultimately, the district court denied Hubbard's motion. According to the district court, the presentence investigation was an implied term of the agreement because it ordered the report "be finished before the sentencing hearing could be conducted." The district court therefore found that, because Hubbard breached the agreement by failing to complete the presentence investigation report, there were no grounds to enforce the agreement.

Thereafter, Hubbard filed a motion to withdraw his guilty pleas, arguing he retained the right to withdraw his pleas if the district court rejected the agreement. The State opposed Hubbard's motion, contending his noncompliance with the presentence investigation breached the agreement and released the State from its promises. The State also asserted Hubbard failed to provide "just reasons" for withdrawing his guilty pleas and that it would be prejudiced by the withdrawals. The district court denied Hubbard's motion after it determined that his guilty pleas were made knowingly, intelligently, and voluntarily. The district court also found that Hubbard failed to establish a just reason warranting withdrawal of his guilty pleas and that he "effectively forfeited his right to withdraw his guilty pleas by breaching the agreement."

The district court ultimately sentenced Hubbard to a term of fifteen years, with a minimum period of confinement of nine years, for aggravated battery and a concurrent, unified term of five years, with a minimum period of confinement of four years, for aggravated assault. Hubbard appeals.

## II.

## STANDARD OF REVIEW

Whether a plea agreement has been breached is a question of law to be reviewed by this Court de novo, in accordance with contract law standards. *State v. Jafek*, 141 Idaho 71, 73, 106 P.3d 397, 399 (2005). As with other types of contracts, "the interpretation of a plea agreement and its legal effects are questions of law to be decided by the Court if the terms are clear and unambiguous." *State v. Lutes*, 141 Idaho 911, 914, 120 P.3d 299, 302 (Ct. App. 2005). The determination that a plea agreement is ambiguous is a question of law; however, interpretation of an ambiguous term is a question of fact. *State v. Peterson*, 148 Idaho 593, 595, 226 P.3d 535, 537

(2010). A trial court's factual determinations shall not be set aside on review unless they are clearly erroneous. *Id*.

## III.

## ANALYSIS

Hubbard contends the district court erred when it found that he breached the plea agreement. Alternatively, Hubbard argues he "cured the alleged breach by providing conforming performance within a reasonable time." Hubbard also asserts the district court's remedies were improper for a "non-material or cured breach" of the agreement and that he should have been allowed to withdraw his guilty pleas. In response, the State contends Hubbard "breached an implied material term of" the agreement and that the district court's decisions and findings are supported by the record. We hold the district court erred in failing to abide by the procedural rules for rejecting a binding plea agreement.[2]

We begin by analyzing the nature of Hubbard's plea agreement. Although not in writing, the agreement's terms were read into the record by the mediating judge at Hubbard's change of plea hearing:

> The parties, after discussions, agreed on the following terms and wished to enter a change of plea on the record and also bind the [c]ourt's hand with a binding Rule 11 agreement as follows: That the State would be dismissing all of the [aggravated] batteries, except for the [aggravated] battery with regard to the guitar, and he would plead guilty to that agg[ravated] battery.
>
> And with regard to the assault, I'm afraid we didn't actually specify which assault, but he would also be agreeing to plead to one aggravated assault. The agreement was that the other counts would be dismissed by the State with an underlying sentence that the parties would stipulate and agree to being seven years fixed and eight indeterminate. However, it would bind the [c]ourt's hands with regard to a stipulated agreement for probation, irregardless [sic] of the PSI, but with the following terms.
>
> One, he be given credit for time served already in the neighborhood of 2.8 years. Not exactly sure on the timeline there, but they will get that information to

---

[2]     Because we resolve this case based on the district court's failure to abide by the procedural rules for rejecting a binding plea agreement under I.C.R. 11(f)(4)(A)-(D), we need not address the remaining arguments raised by Hubbard or the State. Although not necessary to our disposition, we note that participation in the presentence investigation was a term of Hubbard's release, not a term of the plea agreement. While the district court could consider Hubbard's failure to attend his original appointment with the presentence investigator in deciding whether to accept the binding plea agreement, that failure did not excuse compliance with the applicable rule.

you. That he would, as a term and condition of probation, be assigned to obtain a domestic violence evaluation, and that he would follow all recommendations of the evaluation as a term and condition of probation. That the two cases would run concurrent with one another. Obviously the agg[ravated] assault is--got a 15-year max, so it would run concurrent with the agg[ravated] battery, but they would still be two convictions.

Then a few other terms they agreed to put in the binding Rule 11 agreement would include that the State would waive any costs to--costs of prosecution. They would also stipulate to no [public defender] restitution. Even though the case started with the public defender's office, it has ended with private counsel[.] They agreed to leave vague and open, but also stipulate to the general term that the fines would be minimal in consideration of what his anticipated probation costs, domestic violence evaluation, and treatment costs, and clarified both with the State and with the victim that there would be no request for restitution.

The parties would understand as the normal terms that they would be free to argue for early release from probation, factoring in even the time that he's served since 2018, even though we know probation wouldn't start until the sentence. But no real agreement on that, just a general understanding that probation could end premature with good cause. And I believe that is the full agreement.

The district court summarized its understanding of the agreement, which both the State and Hubbard confirmed as accurate. During the plea colloquy, the district court referenced Hubbard's guilty plea advisory form and confirmed the waiver of his right to remain silent post-plea. Thereafter, Hubbard provided a factual basis for his guilty pleas. Ultimately, the district court accepted Hubbard's guilty pleas after determining they were made knowingly, intelligently, and voluntarily.

Idaho Criminal Rule 11(f)(1) allows prosecutors and defense attorneys to resolve a defendant's case by agreeing on a specific sentence. Under I.C.R. 11(f)(2), if a plea agreement includes dismissal of a charge, a specifically agreed-upon sentence or any other agreed upon disposition of the case, the trial court may accept or reject the agreement or may defer its decision until it reviews the presentence report. If the trial court accepts the plea agreement, it must inform the defendant that it will be bound by the terms of the agreement in the final disposition of the case. I.C.R. 11(f)(3). Rejection of a binding plea agreement, however, must comply with the procedure outlined in I.C.R. 11(f)(4).

In this case, the mediating judge informed the district court that the parties intended to enter into a binding plea agreement. The district court advised Hubbard that, while the parties intended the agreement would bind the court, it reserved the right to reject the agreement "pending the

outcome of the presentence investigation." The district court notified Hubbard that, if it rejected the agreement, he could withdraw his guilty pleas and proceed to trial on all of his charges. However, the district court denied Hubbard's request to do so after it found that his failure to participate in the first presentence investigation appointment constituted a breach of the agreement. According to the district court, once Hubbard breached the agreement, "there was no longer a sentencing agreement for [it] to reject." The district court erred in finding Hubbard's alleged breach voided the binding plea agreement.

Nothing in I.C.R. 11 supports the proposition that a defendant who allegedly breaches the terms of a binding plea agreement forfeits the right to withdraw his guilty plea or that an alleged breach terminates the agreement itself. Although the district court relied on *State v. Tyler*, 139 Idaho 631, 84 P.3d 567 (Ct. App. 2003) in support of its finding, the facts in *Tyler* are distinguishable. While the defendant in *Tyler* also entered into a plea agreement, the terms of which were set forth orally at the change of plea hearing, that agreement was not presented as a binding agreement under I.C.R. 11. Because the plea agreement in *Tyler* was not offered as a binding plea agreement, the constraints from I.C.R. 11(f)(4) did not apply. In contrast, the record in this case shows multiple instances during the change of plea hearing where Hubbard and the State indicated their intent to bind the district court to the terms of the agreement. The district court acknowledged the parties' intent during the plea colloquy when it advised Hubbard as follows:

> THE COURT:     All right. So in addition, the plea agreement as recited by [the mediating judge] and as the parties acknowledged here today and you did as well, Mr. Hubbard, it's a binding plea agreement, which means the [c]ourt can still reserve its right not to accept that plea agreement pending the outcome of the presentence investigation report and the domestic violence evaluation, in which case if the [c]ourt does reject the binding Rule 11 plea agreement, you would be entitled to withdraw your guilty pleas and proceed to trial, jury trial on all of the charges. You understand that?
>
> [HUBBARD]:     Yes.

The plea agreement in *Tyler* resembles the agreements discussed in I.C.R. 11(f)(1)(B), which states an agreement may involve a recommendation (or an agreement not to oppose the defendant's request) for a particular sentence, "with the understanding that the recommendation or request is not binding on the court." With these types of agreements, the trial court is required

to advise the defendant that he or she has no right to withdraw his or her guilty plea should it reject the recommendation or request. I.C.R. 11(f)(2). Conversely, the procedure and rights afforded to a defendant differ when the parties enter into a binding plea agreement. When a trial court rejects a binding plea agreement it must, on the record: (a) inform the parties of the rejection; (b) advise the defendant in open court that it is not bound by the plea agreement; (c) afford the defendant the opportunity to withdraw his guilty plea; and (d) advise the defendant that if he or she persists in the guilty plea, the disposition of the case could be less favorable than the terms of the plea agreement. I.C.R. 11(f)(4)(A)-(D).[3] The district court failed to do so. Rather than afford Hubbard the opportunity to withdraw his guilty pleas after rejecting the negotiated agreement for a suspended sentence in favor of probation, the district court denied Hubbard's request to withdraw his guilty pleas and imposed a unified, fifteen-year sentence, with a minimum period of confinement of nine years, for aggravated battery and a concurrent, unified five-year sentence, with a minimum period of confinement of four years, for aggravated assault. The district court erred when it failed to abide by the procedural rules for rejecting a binding plea agreement.

## IV.

## CONCLUSION

The district court erred in failing to abide by the procedural requirements of I.C.R. 11(f)(4) when it rejected the binding plea agreement. Accordingly, we vacate Hubbard's judgment of conviction for aggravated battery and aggravated assault and remand this case for further proceedings consistent with this opinion.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.

---

[3] We note that, if a court rejects an I.C.R. 11(f)(3) plea agreement and permits the defendant to withdraw his or her guilty plea, the State is no longer bound by the plea agreement and retains the right to reinstate any and all charges dismissed or amended pursuant to the plea agreement.

7